## MARY E. SIMMONS *vs.* LODEMA FAIRCHILD and others.

It is a fundamental rule, in pleading, that where there are separate counts, in a complaint, each must disclose a distinct right of action.

Another rule is that the complaint should consist of allegations or averments of *fact* stated positively, or upon information and belief.

A complaint contained two counts; the first setting forth the will of P. S. deceased, and praying that it might be declared void, for certain reasons there assigned. The second count contained no allegations of fact, except that certain specified questions had arisen under or in respect to the will set out in the first count. The reference to the will as set out in the first count was in these words: "Assuming that the said instrument was duly executed" &c. *Held* that this was not a sufficient reference to the preceding count to make the will a part of the second count. That there should have been, in express terms or by implication, after an allegation of the making of the will, an averment of the due execution of the same; and then a reference to the former count for its terms, date and manner of execution might have been sufficient. J. C. SMITH, J. dissented.

*Held,* also, that assuming that the reference, in the second count, to the will was sufficient to make the will a part of that count, the count was still defective, for want of the requisite allegations to make the will operative as a will of either real or personal estate, or the subject matter of an action. That there was nothing in the shape of a cause of action presented in the second count, and that it could not be helped out by reference to the first count.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint, consisting of two counts, was as follows: "*First.* The plaintiff complains against the defendants and alleges, that on or about the 26th day of February, 1861, at the town of Perinton, in the said county of Monroe, and state of New York, the above named Peter Sines, the father of the said plaintiff, died, seised in fee of the real estate hereinafter described, [describing it;] that said deceased also left personal estate and property of the value and amount of one thousand dollars and upwards; that he left the defendant Lodema Fairchild, now the wife of Adonijah H. Fairchild, then Lodema Sines, his widow; and that he left the said plaintiff, his only child and heir at law, then and now the wife of James J. Simmons; and that the defendants, Emily Simmons, James

F. Simmons, and Peter A. Simmons, then were and still are the infant children of the plaintiff by her said husband; the said Emily, the eldest, being of the age of twelve years in June, 1862. That prior to his death, and about the time it bears date, an instrument in writing, of which a copy is here-inafter set forth, purporting to be the last will and testament of said deceased, was drawn by one L. C. Aylworth, a justice of the peace, of Victor, in the county of Ontario, and was formally executed by said deceased, of which said instrument the following is a copy, to wit:

"I, Peter Sines, of Perinton, in the county of Monroe, and state of New York, of the age of sixty-four years and upwards, being of sound mind and memory, do make and publish and declare this my last will and testament, in manner and form following, that is to say: I give and bequeath all and singular my entire estate, in possession or expectancy, of whatever kind, or nature or description, to my well beloved wife Lodema; I having full confidence in her discretion, and I well knowing that my said wife will always be the most prudent protector of our daughter Mary Emily, and her little ones, *during her life.* I think it is the best way to vest in my said wife the absolute title to my whole estate, without reserve. And I hereby revoke all former wills by me made. In witness whereof I have hereunto set my hand and seal, at Perinton, this thirteenth day of October, one thousand eight hundred and sixty.

(Signed,) PETER SINES." [SEAL.]

With an attestation clause, in the usual form, subscribed by three witnesses.

"And the said plaintiff, upon information and belief, alleges that the said instrument was and is void as a will, for the following reasons:

*First.* She alleges that at the time of its execution, the said deceased was so weak and enfeebled in body and mind, from long continued sickness and disease, and to such an extent under the influence of stimulants, taken and admin-

istered at the time, as not to be of sound, disposing mind, memory or understanding. *Second.* That, being in that enfeebled condition, at and prior to the time of its execution, he was unduly influenced by the said Lodema, and others acting in her interest, to make such will, contrary to his real intent and wishes, when unbiased, as expressed by him at other times, which were that the plaintiff, as his only child, for whom he cherished the greatest affection, should receive the whole of his property, except so much as the said Lodema would receive by way of dower, and under the statute of distributions. *Third.* That, being in that enfeebled condition, an imposition was, in effect, practised upon him, whether designedly or not, in that he was persuaded to believe that there was nothing in the will giving to the said Lodema more than a life estate in his said property, unless this court shall decree, as hereinafter prayed, that upon a proper construction of said instrument, it does in reality give the said Lodema a life estate only. And the plaintiff further alleges, that the said deceased died on the 26th of February, 1861, at Perinton aforesaid, and thereafter, and on or about March 12th, 1861, said instrument was admitted to probate by and before the surrogate of Monroe county, and shortly thereafter, letters of administration of the goods, chattels and credits of said deceased, with the said alleged will annexed, were issued to the said Lodema; that for about a year after her father's death, she, the said plaintiff, with her husband and children, continued to live on said farm with her mother, the said Lodema, at her request, in order to help her settle up the estate; that at that time the plaintiff had not been fully informed of the circumstances going to impeach the due execution of said will, and it was not insisted by the said Lodema that she had more than a life interest in said property; and it was conceded by her mother that she, the said plaintiff, was the owner in fee and in her own right, subject to such life estate, of the said property; and it was talked of between them that the best way of disposing of the

Simmons *v.* Fairchild.

property was to sell it and divide the proceeds between them in accordance with their supposed rights as aforesaid. But that afterwards, and on the first day of January, 1863, the said Lodema married the defendant, Adonijah H. Fairchild; and that since her acquaintance with and marriage of the said Fairchild, she, the said Lodema, and her husband, acting in concert with her, have begun to, and do, repudiate all claims of the plaintiff and her children to any portion of the estate; and that the said Lodema and her said husband are using and disposing of the said property and the rents, issues and profits thereof, and are spending the said personal property, principal and interest, and claim that it is absolutely the property of the said Lodema in fee, and in her own right, to the exclusion of the said plaintiff and her children.

2d. And for a second and further cause of action, the plaintiff alleges that, assuming that the said instrument was duly executed, and is valid as the last will and testament of the said deceased, questions have arisen as to what construction ought rightfully to be put upon it, that is to say: *First.* Whether the words, "during her life," in the first and only disposing clause of said will, relate to and control the previous words of disposition of property and estate in said clause, and refer to the "life" of the said Lodema, or whether they refer to the life of "our daughter, Mary Emily," &c. the plaintiff, and are intended to define the period during which the testator means to direct the said Lodema to "protect" the plaintiff and her children. *Second.* Whether the clause beginning with the words, "I, having full confidence," &c. and ending with the words, "during her life," creates a trust in favor of the plaintiff and her children, for support and maintenance out of said property, or whether they constitute simply a recommendation of the plaintiff and her children to the bounty of the said Lodema. *Third.* Whether the words "I think it is the best way to vest in my said wife the absolute title to my whole estate, without reserve," enlarge the previous life estate (supposing it to be such) into

a fee, or whether they constitute simply an expression of opinion of the testator, that it is best, as he has therein before done, to give said Lodema full control, as far as life estate could do, of all his property, absolutely, without reserving any right to the plaintiff in any of said property, during the continuance of such life estate. *Fourth.* Whether, upon the whole will, the said Lodema has a life estate or a fee in said property.

And the plaintiff further alleges that her said infant children are made defendants, because, by reason of their infancy, they could not be consulted or properly made plaintiffs. The plaintiff, therefore, demands judgment in this action. *First.* Establishing and determining that the said instrument in writing, purporting to be the last will and testament of said deceased, was not duly executed for the reasons in that behalf set forth in said first cause of action, and that the same be set aside and declared void; or, *Second.* In case it should be determined that said instrument was duly executed as a will, and is not void for any of the reasons alleged in said first cause of action, then, as alternative relief, she prays that the said will may be judicially construed, and its true meaning declared and determined by the decree and judgment of the court in this action, and that it may be adjudged to give to the said Lodema a life estate only in said property, charged with the support and maintenance of the plaintiff and her said children during the continuance of such life estate, and that subject to such life estate and charge thereon, the fee of said real estate, and the reversion of said personal estate is undisposed of by said instrument, and descends and is to be distributed to the plaintiff as the only child and heir-at-law of said deceased. *Third.* Awarding costs to all parties out of the estate. *Fourth.* Such other or further judgment or relief, in the premises, as shall be just."

The defendants put in an answer denying the allegations contained in the first count or cause of action in the com-

plaint, and demurred to the alleged cause of action marked "2d," in the complaint, and specified the following causes of demurrer, to wit: "1st. That the said alleged second cause of action does not state facts sufficient to constitute a cause of action. 2d. That the two alleged causes of action in the said complaint stated, are inconsistent, and improperly joined in one action and complaint."

The court, at special term, gave judgment for the plaintiff, on the demurrer, with leave to the defendants to answer, on payment of costs.

*W. F. Cogswell*, for the appellants.

*F. E. Cornwell*, for the respondent.

E. DARWIN SMITH, J. The question is, does the second count of the complaint sufficiently state any cause of action? I think it does not, and that the demurrer is well taken. It is a fundamental rule in pleading, that where there are separate counts in a complaint, each must disclose a distinct right of action. *Chitty* says: "The separate counts are for all purposes as distinct as if they were in separate declarations ; and consequently they must contain all necessary allegations, or the latter must expressly refer to the former." (1 *Chitty's Plead.* 413. *And see Gould's Plead.* § 3, *ch.* 4, *p.* 159.) Another rule of pleading is, that the complaint, or answer, should consist of allegations or averments of *fact*, stated positively, or upon information and belief. This second count contains no allegations of fact, except that questions have arisen under, or in respect to the will, set out in the first count. The reference to the will, as set out in the first count, is in these words: "Assuming that the said instrument was duly executed," &c. This, I think, is not a sufficient reference to the preceding count, to make the will a part of the second count. To make the will a part of the second count, by a proper reference thereto, such reference, I think,

should have been preceded by a positive allegation, or explicit recital, of the fact that the testator, the said Peter Sines, made and executed his last will and testament, at the time, and in the manner and form aforesaid. This would have been sufficient to make the will a part of the second count. In the note to *Chitty's Pleadings*, (*vol.* 1, *p.* 413,) it is said that in a second count, on a deed or agreement, "it is not correct to commence the count by alleging that the deed, or agreement, in the first count, had been made as therein mentioned," &c. But it would seem to be more correct to aver that a certain other deed or agreement was made, &c. containing like terms and stipulations as contained and set forth in the first count. There must, I think, be, in express terms, or by implication, after an allegation of the making of the will or deed, or paper referred to in the second count, an averment in fact of the due execution of the paper, be it deed or will, referred to ; and then due reference to the former count, for its terms, date and manner of execution, &c. may be sufficient. But, assuming that the reference in this second count, to the will, is sufficient to make it a part of such count, that would not make out a cause of action. Nothing else in the first count would be embraced in such second count, except the will. The count would still be defective, for want of the requisite allegations, to make it operative as a will of either real or personal estate, or the subject matter, in any respect, of a cause of action. There would be, and is, no allegation in the second count, that the testator ever had any real or personal property ; that he had died leaving such property ; that he left any heirs surviving him, or a widow. Indeed, there is nothing in the second count to show that Peter Sines is not still alive, and entirely competent to manage and dispose of his property. It seems to me quite clear, that there is nothing in the shape of a cause of action presented in this count; and that it cannot be helped out by reference to the first count.

The demurrer, if I am right in this view, is well taken, and the order overruling the same should be reversed, with leave to the plaintiff to amend the complaint, on payment of costs.

WELLES, J. concurred.

J. C. SMITH, J. dissented.

Order reversed.

[MONROE GENERAL TERM, September 5, 1864. *James C. Smith, Welles* and *E. Darwin Smith,* Justices.]